UNITED STATES of America ex rel. Clarence TORRY, also known as Clarence X., Petitioner,

v.

Nelson A. ROCKEFELLER, Governor, New York State, et al., Respondents.

Civ. 1972–417.

United States District Court,
W. D. New York.

July 27, 1973.

CURTIN, District Judge.

The instant petition for a writ of habeas corpus challenges the validity of petitioner's conviction in Niagara County Court in 1971 of two violations of Section 1751(1) of the former New York Penal Law. The conviction resulted from a verdict of guilty rendered by a jury in a nine-day trial and led to the imposition of a sentence of seven to fifteen years imprisonment. The Appellate Division, Fourth Department, affirmed the conviction without opinion, People v. Torry, 333 N.Y.S.2d 749 (1972), and leave to appeal to the Court of Appeals was denied.

On his appeal petitioner argued, *inter alia,* that during his trial he had been deprived of the right to the assistance of counsel guaranteed by the sixth and fourteenth amendments. *See* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This claim, which is the sole issue raised in the instant petition,[1] arises out of the following facts.

On October 5, 1967 petitioner appeared before Judge John V. Hogan for arraignment on the charges of which he was ultimately convicted. The arraignment was adjourned when petitioner stated that his retained attorney Ray Green was unable to be present. On October 10, 1967 petitioner applied for a reduction of bail through Attorney James Librize, but Judge Hogan denied the application. On October 16, 1967 petitioner was scheduled to be arraigned but he had no counsel. He initially indicated to Judge Hogan that he did not wish assigned counsel and would represent himself. In subsequent colloquy, however, it became clear he didn't really wish to proceed *pro se* but instead wanted an attorney of his "own choice". Judge Hogan thereupon "appoint[ed] Victor Rippo from the Public Defender's office to represent [petitioner]" and asked that "one of the representatives" of the office appear at petitioner's ar-

raignment. On October 18, 1967, however, petitioner appeared for arraignment represented by Librize, whom he indicated had been retained by someone else to represent him.

Nothing further in petitioner's criminal case occurred for over two years, during which period petitioner was confined in a Canadian prison. On March 5, 1969 bail was set for petitioner in a proceeding before Judge Hogan in which petitioner was represented by Librize. On May 6, 1969 petitioner appeared before Judge J. Kenneth Serve. He requested the appointment of counsel to represent him but stated that he did not wish to be represented by an attorney from the Public Defender's office because a previous experience with a lawyer from the office had left him "somewhat doubtful, distrusting." Judge Serve indicated that he could not appoint an attorney from outside that office and he thereupon "assign[ed] the Niagara County Public Defender or a member of his staff to act as counsel for [petitioner]." On May 13, 1969 the Public Defender, Victor Rippo, appeared for petitioner before Judge Serve on an application for a reduction of bail and indicated that petitioner was still attempting to retain an attorney on his own. Nevertheless, thereafter, on May 27, 1969 and February 17, 18 and 25, 1970, an Assistant Public Defender, David S. Seaman, argued motions in petitioner's case without objections by petitioner.

Apparently no further court proceedings occurred in petitioner's case between February 25, 1970 and March 8, 1971, when petitioner's trial started. In order to determine the facts pertaining to this period of time, the court held a hearing at which testimony was given by petitioner, Public Defender Rippo and Robert E. Nicely, the Assistant Public Defender who represented petitioner at trial until petitioner discharged him. Upon considering the tes-

---

1. The petition as originally filed raised other claims which were dropped by amendment of the petition.

timony, the court finds the following facts: Seaman, whom Rippo had originally assigned to handle petitioner's case, resigned from the Public Defender's office at the beginning of 1971 to join the staff of the District Attorney. Rippo thereupon designated Nicely to handle the case. Although Nicely could not give details of his meetings and conversations with petitioner prior to trial, he had a specific recollection of a meeting "several months" before trial at which Rippo introduced him to petitioner and informed petitioner that he would represent petitioner at trial. Although Nicely and petitioner disagreed over the utility of calling a handwriting expert to testify that a signature on an affidavit was in fact that of the informer who implicated petitioner, petitioner did not express dissatisfaction with Nicely's performance prior to trial, and Nicely was "surprised" when petitioner sought to discharge him during trial. Petitioner's denial that he met with Nicely prior to trial is not credible.

When petitioner's trial commenced before Judge Hogan on March 8, 1971, Rippo appeared to pick a jury because Nicely was finishing up another case. Although petitioner indicated that when the assignment of the Public Defender was made by Judge Serve he had thought that he would be represented by Rippo personally, he did not ask for a continuance to obtain another attorney. Nor did he claim that he had not met with Nicely prior to trial.

During the presentation of the defendant's case on March 18, 1971, petitioner requested that the court allow him to discharge Nicely as his attorney and grant him a continuance so that he might seek new counsel. This request was apparently prompted by the aforementioned disagreement between petitioner and Nicely over the utility of presenting testimony by a handwriting expert. Judge Hogan permitted petitioner to discharge Nicely but refused to grant a continuance, and petitioner proceeded *pro se* up to the point of sentencing, when he was represented by Ste-

phen J. Perrello, Jr., one of his counsel in the instant proceeding.

Petitioner's claim that he was denied his right to the assistance of counsel comprises three contentions. The first is that he was not allowed to be represented by the assigned counsel of his choice, Rippo. The second is that the court erred in not granting his motion for a continuance so that he could obtain a new attorney after discharging Nicely. The third is that he did not effectively waive his right to the assistance of counsel when he discharged Nicely.

Turning to the first contention, the applicable law is stated in Davis v. Stevens, 326 F.Supp. 1182, 1183 (S.D.N.Y. 1971), as follows:

> . . . while [the] right to counsel includes the right of an indigent defendant to have counsel appointed for his benefit free of charge to him, Gideon v. Wainwright, *supra*, it never has been held that this right to counsel also comprehends a right of an indigent defendant to have counsel of his choice appointed for him. Rather, it is the duty of the court to appoint counsel for the indigent defendant, and unless there is good cause shown why the appointment of a particular attorney should not have been made, the defendant must accept the attorney selected by the court unless he waives the right to be represented by counsel.

It may be that petitioner believed Judge Serve had assigned Rippo personally, and not the Public Defender's office generally, to represent him and that he "accepted" Rippo and no one else as his lawyer. Nevertheless, he has not alleged or proved the existence of circumstances such as "evidence of disqualification or bias" on the part of Nicely, Nash v. Reincke, 325 F.2d 310, 312 (2d Cir. 1963), which would constitute good cause why Nicely should not have been designated to try his case. His asserted lack of trust in Nicely, resulting from disagreement over the tactics to be employed at his trial, would

not constitute a reason sufficient to support a refusal to accept Nicely as his lawyer. Petitioner was therefore not deprived of his right to the assistance of counsel when Nicely and not Rippo appeared as his attorney at trial.

■ Turning to petitioner's second contention, it is clear that "[o]nce trial has begun, . . . a defendant does not have the unbridled right to reject assigned counsel and demand another." United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972). The decision to grant a continuance traditionally lies within the discretion of the trial judge, Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), and "[i]n order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Calabro, supra, 467 F.2d at 986. No such circumstance appears to have existed at petitioner's trial: his disagreement with Nicely over the utility of calling a handwriting expert did not amount to a complete breakdown in communication or an irreconcilable conflict rendering the denial of his motion for a continuance a denial of his right to the assistance of counsel.

Finally, petitioner contends that he did not effectively waive his right to the assistance of counsel when he discharged Nicely. This claim must be evaluated within the context of the following principles.

■ An accused is of course not required to accept representation by counsel. Adams v. United States ex rel. McMann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). He has the constitutional right, unqualified if invoked prior to the start of trial but "sharply curtailed" if asserted thereafter, to manage and conduct his own defense. United States ex rel. Maldonado v. Denno, 348 F.2d 12, 15 (2d Cir. 1965), cert. denied sub nom. DiBlasi v. McMann, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966); United States v. Plattner, 330 F.2d 271 (2d Cir. 1964).

■ The right to the assistance of counsel and the right to defend pro se "form a single, inseparable bundle of rights, two faces of the same coin." United States v. Plattner, supra, 330 F. 2d at 276. Obviously a defendant cannot exercise both rights simultaneously. He must choose between them, and if he knowingly elects to represent himself he waives the right to a lawyer.

■ It is because a defendant waives the right to counsel when he exercises the right to defend pro se that he "must make an unequivocal request to act as his own lawyer in order to invoke the right." Maldonado v. Denno, supra, 348 F.2d at 15. See United States ex rel. Higgins v. Fay, 364 F.2d 219, 222 (2d Cir. 1966).

■ Further protection to the accused lies in the requirement that his assertion of a desire to represent himself constitute "an intelligent and competent waiver" of the right to counsel. Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). It is preferred practice for the trial court to conduct an inquiry sufficient to enable a reviewing court to determine whether the defendant "knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McMann, supra, 317 U.S. at 279, 63 S.Ct. at 242. See United States v. Rosenthal, 470 F.2d 837, 844–845 (2d Cir. 1972); United States v. Calabro, supra, 467 F.2d at 985; United States v. Duty, 447 F.2d 449, 451 (2d Cir. 1971); United States v. Spencer, 439 F.2d 1047, 1049–1052 (2d Cir. 1971); United States v. Trimm, 416 F.2d 1145, 1147 (2d Cir. 1969); United States ex rel. Higgins v. Fay, supra, 364 F.2d at 222; United States v. Curtiss, 330 F.2d 278, 280 (2d Cir. 1964); United States v. Plattner, supra, 330 F.2d at 276. The court should "examine the defendant with specificity and advise against self-representation, emphasizing the risk, pitfalls and complexities inherent in such proce-

dure and the serious consequences of conviction. . . ." United States v. Duty, *supra*, 447 F.2d at 451. The failure of the trial court to proceed in this manner, however, is not a fatal defect where "in light of all the circumstances [one can conclude] that [defendant] was well aware of his right to counsel and of the advantage of representation by counsel." United States v. Rosenthal, *supra*, 470 F.2d at 845. *See* United States v. Calabro, *supra*, 467 F.2d at 985.

■ Considering all the facts of petitioner's case, it is clear that his discharge of Nicely constituted a knowing waiver of his right to the assistance of counsel. Although the explanation was not as complete as it might have been, Judge Hogan explained to petitioner that it is advantageous to be represented by counsel, as he had done in previous proceedings in the case. Furthermore, Judge Hogan made clear to petitioner that his choice was between continuing with Nicely as his attorney and proceeding *pro se*. Petitioner's statements in earlier proceedings in the case and his subsequent remarks indicate that he understood the desirability of representation by an attorney, while his answers to Judge Hogan's questions at the time of Nicely's discharge reveal that he perceived that the choice facing him was between representation by Nicely and defending himself. The fact that he wished a third choice—representation by an attorney other than Nicely—does not render ineffective the choice he made. Petitioner's case is similar to Kates v. Nelson, 435 F.2d 1085 (9th Cir. 1970), where it was held that the defendant's refusal to choose between representation by counsel assigned to him and proceeding *pro se* constituted a waiver of his right to the assistance of counsel.

The petition for a writ of habeas corpus is dismissed.

Certificate of probable cause is denied.

Permission to appeal in forma pauperis is also denied, with the qualification that the petitioner may file with the Clerk of the United States District Court, United States Court House, Buffalo, New York, a notice of appeal, without the payment of filing fees.

This denial does not prevent the petitioner from applying directly to the Court of Appeals for the Second Circuit, United States Court House, Foley Square, New York City, for a certificate of probable cause, and for permission to prosecute an appeal in forma pauperis.